We'll now hear the case of Ghanem v. Attorney General, and we will begin with comments on Mr. Weaver. Good morning, Your Honors, and may it please the Court. My name is Will Weaver, representing Petitioner Adele Ghanem. I'd like to request two minutes for rebuttal. Granted. Thank you. In this case, the BIA was able to find that Petitioner had not demonstrated a political nexus to his persecution only because the BIA ignored and mischaracterized critical record evidence that supports Petitioner's No reasonable fact finder could find that Mr. Ghanem's political opinion was not at least one central reason for his brutal persecution that he suffered in Yemen and the persecution he reasonably fears if he's returned there. This is true because Petitioner's testimony, which the IJ and the BIA found to be completely credible, contains example after example of Ghanem communicating his anti-Houthi political opinion to his persecutors immediately before his persecution began, showing that the entire series of persecutory events were triggered by his expression of that opinion. His testimony contains example after example of Ghanem's persecutors communicating their political motive to him when they beat him, took his family away, kidnapped and tortured him for two weeks. And his testimony contains example after example of the persecutors political motive as they forced Petitioner into exile and grew in number over time finally in 2014 using a Houthi court and the Houthi-controlled state security service to obtain a judgment, 10-year sentence, and arrest order against Petitioner explicitly because of his political association and activity. And again, Petitioner's credible unrebutted testimony is that all those later events were based solely and explicitly on his political expression and activity. When you say solely and explicitly, are you dropping the religion as a protected ground for him getting any relief? Yes, Judge Phipps, we're not contesting that he's eligible for relief under asylum on the basis of religion. This is a political persecution case. And what about the IJ and BIA's conclusion that this was a result of familial tensions? When you say it's exclusively based on political belief, on this record, isn't there substantial evidence that the tension in familial relations was itself a significant cause of the harm he suffered? Well, Your Honor, the issue is what motivated the persecutors, not their identity as family members or of any other group. The INA lays out the standards for eligibility for asylum and it does not exempt family members or any other group from being potential persecutors. The issue is, as this court said in Espinoza-Cortez, whether the persecutor attributes a political opinion. Well, I mean, as I understand it, the persecution that, or the persecutory conduct that he experienced, that your client experienced, was after a conversation in, I think, December 2011. And then his brother-in-law, which include kind of a cousin as well as I understand it, said, you need to divorce our sister. And then he said, no, I'm not divorcing your sister. And so at one level, I mean, this gets into like, what is one central reason? I assume if he would have divorced their sister, he wouldn't have been tortured or treated so the really interesting thing comes down to, well, maybe they requested that he divorced them based on his political opinion. Maybe it was something else. Maybe it was that they wanted to go to, he wanted her to go to school. It could have been a lot of things, but what prompted it, if this were approximate cause analysis instead of one central reason test, the approximate cause was that he didn't divorce, right? Your Honor, I'd make two points on that. The first is that all of the subsequent statements of Ghanim's persecutors after he was released and upon his release from being tortured and the later attempt to get a judgment against him and an arrest order are explicitly, they state, and Ghanim testified to the fact that those were based on his political opinion. And secondly, even as the government concedes in its brief at 18 and 42, the divorce demand itself was motivated by his anti-Houthi political opinion. So even taking the divorce demand, that's a method of the persecution that they used against him that even the government admits was motivated by his anti-Houthi political opinion. So it's hard to ignore that clear familial aspect in this case and very difficult to grapple with because, well, we don't have a case on point. But here it seems like there was personal motivation that was distinct from a political one. The circumstances were very unique. It seemed to me that personal motivation is what really drove the conflict between Ghanim and his brother-in-law or his brother-in-law. Well, your honor, I would point to this court's recent decision in Doe and also the many statements in the record. So on Doe first, in that case you have a circumstance where the persecutor is the father of a son and the father leads a violent mob in persecuting and beating his son and chasing him around town. And so under the BIA's logic below, one could easily characterize that as a is what motivated the father to do this to his son. And in that case, the court said that there can be no serious dispute that what motivated the father was that he had caught his son with another man. And so the protected ground of sexual orientation was invoked. And despite the fact that the violence and the persecution was committed on a familial level, the court looks at what motivates the persecutor. So just to tease this out, if Ghanim would have divorced his first wife in accordance with the brother-in-law's demand, I mean, I don't think he would have been tortured. Well, your honor, I would point to the record at AR442 and that describes all the things that Ghanim's persecutors said to him during his torture. And that included, they were demanding that he quote, give them information in quote, like the names of people Ghanim used to talk to and give information to. And they accused him of quote, being a spy against them. And when the men released Ghanim, and this is at AR1042 through 43, they told him explicitly quote, stop doing what he was doing, close quote. And if he didn't leave the country, they wouldn't negotiate, they would kill him. That seemed to have come much later, but it seemed to me that, but for would have been attacked. Well, your honor, that gets to the one central reason test. And even under the government's analysis, conceding that the divorce demand was based on his political opinion, also makes his political opinion a but for cause of all the persecution that followed. So even if there was an element of familial tension outside of his political opinion, which I would contend, the record doesn't reveal anything like that. The government did not elicit any testimony from Ghanim or introduce any other evidence suggesting that there was another motive, aside from the fact that the brothers-in-law and then the other men who joined them to persecute him didn't like his political opinion. Well, the administrative record says that they were worried that he would bring shame to their tribe by having his wife educated. Now, I mean, that sounds like that could be a familial tension where there's a familial disagreement between what sort of family, but it's also weird that he got released after he agreed to divorce, which suggests to me that if political motivation is the reason that you're torturing someone, then you release them once he says, hey, I agree to divorce my wife. And so if it was still political tension, then why wouldn't they put political persecution? Why wouldn't they keep him there? They should have changed his views. He didn't change his views. So release dependent on the divorce is different than release dependent on negation of prior political beliefs. Well, your honor, the record also shows again at AR-442 that he testified that they also demanded, or excuse me, it's AR-1042-43 that they said he had to, quote, stop doing what he was doing and leave the country or they would kill him. But so, I mean, again, the uphill battle that your client faces is that we're under substantial evidence review. If this were beyond a reasonable doubt or if this were preponderance of the evidence or clear and convincing evidence, but what happens is substantial evidence accounts for upholding an agency's decision even when there is some countervailing points. The question is, would a reviewing court be compelled to reach the opposite conclusion? And I guess what I'm saying is it's hard to feel compelled to reach that conclusion when he gets released upon agreeing to divorce his wife. Well, your honor, this court has over and over again said that the principles that govern substantial evidence are also that where findings and conclusions are based on inferences or with substantial evidence. And in this case, Fischer would submit that no reasonable fact finder could find based on the record that political opinion wasn't at least one central reason. So even if there were other reasons in the record, that's the standard by which the court is evaluating the BIA's decision, not whether it got the only reason correct, but whether political, excuse me, Judge Fuentes. Yeah, I see the government's point that what Mr. Ghanem stood for isn't exactly clear in this record. So how do we find a political connection? Well, your honor, I would say, I would disagree with that and say that in fact, the record is very clear about what political opinion he expressed to his brothers-in-law. And it was an anti-Houthi political opinion. And for that, you can go to AR 414, where he told his brothers-in-law when they came to visit, quote, how dangerous the Shia Houthi had become, close quote, AR 1038 through 39, where he called the Houthis criminals and threats to the country. Again, these are statements that he is making to his brothers-in-law at the time, not knowing that they were Houthis. I would also point to AR 1039, where he told them about, quote, protesting at the site we call Land of Change, close quote, and quote, going against the Shia, close quote. Now, protesting at the site we call the Land of Change was Dignity Friday, which was a part of the Arab Spring. But I thought that both the Houthi and Ghanim were against the Saleh regime. Your honor, that's not correct. The Houthis ended up allying with the Saleh regime. And so Ghanim protested the Saleh regime at Dignity Friday. And this is in the State Department reports in the record, both the 2016 report and the 2017 report, and that's at AR 534 and 589, they show that the Houthis ended up allying with Saleh. So that context in the record shows that his expressing that he had been at Dignity Friday to them was going to be a political expression that they, you know, ultimately did not like, and which they persecuted him for. But at the time he made the expressions, they hadn't made that alliance yet, had they? Your honor, I would need to check the record on that. I'm not sure if the alliance had been explicit at that point. But in any event, the Houthis were not, you know, in. Yeah, I mean, it strikes me that he has to specifically state a political opinion in order to qualify for this particular social group. And I don't know that anti-Saleh gets you there, at least at this point in time. So it had to be something anti-Houthi. And the thing that he said that's anti-Houthi seems to be that they're violent, they're too violent. Is that right? Well, and he called them criminals. He called them threats to the country. He criticized them over and over again. He said that the Shia Houthi have become very dangerous to the country. In this record, I thought he also refused to join them when the brothers-in-law were insisting that he join them and take a leadership position because of his education. He did, your honor. And I would point to Espinoza-Cortez as a good analog for what type political opinion is necessary. And in that case, it was simply an anti-FARC political opinion, similar to the anti-Houthi political opinion that Ghanim expressed to his persecutors before they persecuted him. I think we had started at the same time. You had a question? Yeah. Were there any physical interactions between Houthi and Ghanim? Any direct threats directed at him? Well, your honor, three days after his initial expression, the brothers-in-law came with other masked armed Houthi men and beat Ghanim. So that was the first one. And then a few weeks after that, after they had taken his wife and young child away, they came back and they kidnapped him and they tortured him. And again, that was not just Ghanim's brothers-in-law. That was also these other Houthi men who Ghanim recognized as Houthi men because he had been doing work with his uncle who worked for the legacy government security service. And he had been, again, his testimony is that he had been monitoring the Houthis for his uncle. And that's at AR 450 through 454. Mr. Weaver, you are making the arguments about evidence that he actually held this political view. But I thought one of the points that you making in your brief was that under cases like Chavarria, all that you need to show is that a political opinion was imputed to him by the persecutors. That's correct, Judge Krause. And I'm just providing the context on the background because I think that does shed light on what some of the statements he made to his brothers-in-law, what those statements meant, and so what they understood his political opinion to be. Could we go on to... Sorry, Judge Fuentes. No, no. I was going to simply... Is there a record in his country that indeed this is a position that he was taking? Any written record of any kind? There's not, Judge Fuentes. But as this court has said again and again, one does not need to be a card-carrying member. And in Espinoza-Cortez, the court pointed out that there's no need to provide objective evidence of the persecutors' views of the persecuted. And the reason is because how would a petitioner bring that type of evidence to bear in the United States? Well, there's some kind of record because he was taken into custody at some point, wasn't he? He was. He was kidnapped and tortured in Yemen for two weeks. All right. Did he make a record? I mean, it was a record made somewhere along the line or at that point concerning his political views? Yes. The persecutors, while they were torturing him, repeatedly were interrogating him and they called him a spy and they told him to give them information. So in the context of the activities Ghanim had been working on with his uncle, all of that suggests that even aside from that context... But being a spy is different than having a political opinion, right? Being a spy, I mean, that's action. That is very, very different on the opinion-action spectrum. If someone receives retribution for being a spy, maybe they were spying based on, in some part, motivated by a political opinion. But it's also the action associated with that that's divorced from the political opinion, but furthering some other objective. And so it strikes me that the spy point, the best thing that you could do is what Judge Krauss said, which is, look, they thought he was a spy. They weren't punishing him for being a spy. They were punishing him because they thought he was a spy based on what his political opinion was, his anti-Houthi political opinion. That strikes me that the best you can make of a spy because I don't know that being a spy is one of the particular social groups that's protected. Certainly, Judge Phipps. And I think that that statement in conjunction with the others just demonstrates that the persecutors, both the brothers-in-law and the others who were persecuting him, had a political motive outside of whatever personal tension there was between some of the persecutors and the government. Mr. Leverett, go ahead. No, sorry. This is just a quick follow-up. What if they said, look, we're persecuting you just because you're a spy. We don't care who you're spying for. We don't care anything else. Being a spy brings disrepute to our family. Spies are inherently untrustworthy. And now we're going to, you know, take you, kidnap you for two weeks because you're a spy. That's not a protected group, is it? Well, Your Honor, political opinion is Espinoza-Cortez. You have a situation where simply opposing a particular political group is itself a political opinion or certainly an imputed political opinion that can give rise to an asylum claim. And in terms of the imputed political opinion, Judge Fuentes was asking about documentation. I thought it was part of the administrative record and part of the record here on appeal that when he then brought the lawsuit against those who were torturing him, there was testimony by both him and neighbors who were witnesses that substantiated that this was, he was picked up because of his anti-Houthi views. And then there is, and I'd like you to address the Abdullahi issues around this, but we also have the documentation of the arrest circular and the judgment in absentia, which, while not given full weight, were given some deplete by the immigration judge. And both of them on their face seem to indicate that he has been judged in absentia and is to be picked up if he comes into any port based on his political view. Those are in the record before us, right? Yes, Judge Krauss, that's right. And to take the summary of the court proceedings in Yemen first, that is at AR 982 through 87. And it does describe two witnesses who testified. This is Ghanem's civil suit against the men who tortured him. And two witnesses testified that it was his political opinion. It was a political dispute in nature. Can I follow up on Judge Krauss's point? One of the problems here, as I understand it, is that there is either an inaccurate translation or not a very good translation, because he did have documents. But I understand that the immigration judge or immigration court could not make sense of it. And that has impeded any formal decision in this case. Well, Your Honor, the issue below was not one of the provenance of the documents or their validity. The government didn't contest that whatsoever below, despite the IJ giving it an opportunity to research to see if these documents were real. Was there not a problem with a translation of the documents? Your Honor, the IJ gave diminished or limited weight to the documents simply because there was not a certified translation provided. There are English translations of the Arabic in the record. And those are at AR 979 and AR 975. But what those documents show is that the men, who tortured Ghanim in 2014, went to a Houthi-controlled court and the Houthi security service, and they got a 10-year prison sentence and judgment against him in absentia and an order for his arrest. And again, that's circulated, as Judge Krauss pointed out, to all land, air, and sea ports in Yemen. And the documents say this on their face, and that they were explicitly issued because of his political association and activity against the regime. Is there any dispute in the record about the accuracy of the translation? Was that disputed by the government? And of course, Ms. Igoe can address that as well. I would let my friend on the other side address that. But I would say that the only dispute was about whether certified translations were provided. The immigration judge asked the government if it would look into where these documents arose from. And what the government said in the next hearing was that it was unable to do so because the U.S. had essentially pulled out of Yemen at that point. And this is, again, after 2014, after the Houthis had taken control. So there was an invitation to dispute the validity, but that will dispute. Is it, Mr. Weaver, your view that if Ghanim were to go back to Yemen, there's an outstanding arrest warrant for him and he would be, I guess, taken into custody? Is that your view? Yes, Your Honor. Absolutely. And that arrest warrant states on its face that it is because of his anti-Houthi political association and expression. That is because of a process that the brothers-in-law, I understand, initiated in a court in Yemen. That is correct. Okay. And what is his current status as he's in detention, immigration detention? That's right. He's been detained for over three years. Mr. Weaver, let's say that if we agreed with you, you have asked that the next step be that he be declared eligible by this court for asylum and under CAT as well as withholding. But the immigration judge appears in his decision to address only the nexus issue. So wouldn't we need to remand at a minimum for the question of whether asylum would be granted as a matter of discretion or denied on that basis? Your Honor, petitioner requests that the court make a decision on eligibility and petitioner recognizes that that is a rare circumstance and a rare request. But because neither of those elements were meaningfully contested below, the record is overwhelmingly clear that what Ghanem endured easily meets the threshold for past persecution viewed cumulatively, which is how this court looks at past persecution as the court said in Herrera-Reyes or even taking any individual act that occurred. And again, the record is clear on this based on Ghanem's testimony and based on the other documentary evidence in the record. And secondly, there's no real dispute that it was the government that participated in Ghanem's persecution. Initially, you have the Houthi rebels, including the brothers-in-law that take and torture him. But then as the Houthis take over the security service and court, and as the original persecutors employ agents of the Houthi state to get an order for his arrest and to get a judgment against him, there we have the government doing the persecuting. And there's no dispute about that below. So is it your point that if he were to go back to Yemen, that he would get off an airplane and be taken into custody? Very likely, yes, Judge Fuentes. That's because there's an outstanding arrest order or order for his arrest? That's right. And again, I would just remind the court that. That order is based on what? That order, the exact wording of that judgment is, for his association with al-Muklafi group to incite order against the regime and for anti-Shia sedition, closed quote. And then the arrest circular has slightly different language, but the same idea. All right, so it's for political reasons. That's right, Judge Fuentes. All right, Mr. Weaver, we'll come back to you on rebuttal and we'll grant your colleague on the other side of the aisle additional time as well. Thank you. Good morning, Alison Igo representing the Attorney General. The petition in this case makes several errors. First of all, there are no undisputed facts below. The government didn't concede anything. The issue of the rest of the elements of his persecution claim were not were not litigated. Mr. Ghanem was per se. And so there, you know, those issues still remain to be determined. And if the court were to find there was a nexus, it would have to go back. Ventura does not allow this court to make those factual findings in the first instance. But I want to petition to leave that point in the Convention Against Torture portion of the IJ's decision. The court there does state that the Houthi rebels are effectively the governmental body in certain regions and and also seems to make the finding that he would be able to go back to another area of Yemen where he was. That's correct. So so the question of resettlement, the court actually did fine with concern to his cat claim that he could that he didn't prove that he would go back to a Houthi controlled area. And so that question remains to be determined. Even now, made the determination both about the Houthi rebels effectively being the governmental body and made a determination about his ability to relocate, then aren't all of those issues ones that we are reviewing for substantial evidence. But the agency said they're the governmental body in only certain areas of Yemen. When you look at the evidence in the record, it shows that the Houthis controlled a northwestern area in Yemen, which is just south of Saudi Arabia. But the rest of the country is under dispute from a number of remaining factions. The Hadi government, which which also considers itself the true government of Yemen, Saudi forces, the United States was was involved to a certain extent, I believe that most recently was true, but they were also involved. So there's a huge remaining portion of Yemen that is not under Houthi control. So the issues before us when it comes to the elements for asylum and for for cat are whether the government was was unwilling or unable to control the forces and whether there was acquiescence in the torture. And given the given the IJ's finding that the Houthi rebels are the government, at least in some portions of Yemen, does that answer that the question of the elements? I would say no, and no, because it's very important in this case, that he was persecuted if if if we were to agree that that the treatment amounts to persecution, he was he was mistreated by a very small portion, you know, of the Houthi population. And those happened to be his brothers in law. You know, they those were the only people that he showed that that mistreated him. I'm sorry, I thought I thought the record was that he was picked up outside of his kidnapped outside of his home and was tortured by a number of different people. Are you saying that? No, what what the record what the record shows is that his brothers in law brought along other Houthi who were probably family members of the Al-Falahi tribe. But I would also say that what the petitioner does not say is that he was released with the aid of a shake of the Al-Falahi tribe. So it wasn't the entire tribe who the record also shows that that they did lean into the Houthi political theory. But when it came down to the mistreatment, you know, it was his brothers in law, along with cousins and other unidentified people who came along to help. It was his brothers in law who initiated and they brought their buddies, basically. But when when he was detained by his brothers in law and being mistreated, it was a shake from the Al-Falahi tribe, which is who his brothers in law, the tribe to which his brothers in law belong, that helped his release. Can I ask you a question, Ms. Igo, if I pronounced your name correctly? Igo, yes. Is there not an outstanding official document of the government that calls for his arrest or detention? You know, I would dispute that. And the reason that I would is because the situation in Yemen has been very, very complicated. However, what the record does show is that the Houthis did not take over. They did not gain control of Sana'a, which is the capital of Yemen, until September of 2014. This court order comes from July of 2014, before the Houthis even had control of the government. Mr. Weaver, I thought it was pretty clear on it, there is an outstanding order of the official government in Yemen for Mr. Ghanem's arrest. And so that if that is accurate, if he shows up in Yemen, he's going to be taken into custody. The question is whether that is accurate. And although the petitioner just brushes it aside, the immigration judge gave very little weight to that circular. And I would point out that the in July of 2014. The record shows that the Houthis didn't even establish their Supreme Council until January of 2015. Ms. Bizigo, were the Houthis running their own courts in the interim? The record doesn't show that they were. And in fact, the court, the government that shows on the top of that circular, West Amman Ra, it doesn't even appear anywhere in the record. There is an government. But when you look at the map at AR 505, West Amman Ra is not even doesn't even show anywhere, you know, and it may have been some self appointed Houthi court, but that doesn't mean that they had the power to issue a circular to all ports and all airports of Yemen. They didn't even have control over Yemen at that point. They didn't have control over Sanaa. We have to work with the record that's before us. And we have an IJ who, who found Mr. Ghanem, his testimony to be credible and consistent, and gave some weight, albeit diminished weight, to these documents. What, what is there in the government was given the opportunity to provide its own translation or to bring forward evidence of lack of authenticity? Right? It may not be inauthentic, but I would say that there are other documents that the petitioner completely ignores in the record that the IJ did consider. One was his... Did the IJ give the government the opportunity to challenge the accuracy of the translation, or the authenticity of the document? Did the government have that? I don't believe that. I don't believe that the IJ gave the, gave the government the opportunity, but the IJ does not have, have to accept a translation that is not certified. And so this was not a certification. Right. So that's, we have, we have a record where the IJ did accept it and gave it some weight. So you're, you're saying... Okay. So may, may I, and may I point out something in terms of, of the weight with regard to that in absentia order that the petitioner relies on. In his asylum declaration, Mr. Ghanem said that it was only after they found out I brought charges, they started looking for me and they, they brought this case against him. It was not because of his political opinion. It was because he, he obtained a judgment, a money judgment against them. And that's why they were looking for him. That was retaliation for him going to the courts. So let's just, let's just say that the judgment goes that way. What, what about the circular? I mean, the circular seems to suggest that to all ports of entry, and I mean, I guess we have to assume that the Houthi control all the ports of entry now, or we don't have to, I don't know what we assume on that, but the circular goes out. And I mean, if the IJ wants to, under substantial evidence review, the IJ has to account for the whole record, even evidence that detracts from the IJ's conclusion. And I guess I'm struggling to find out what, why the IJ didn't give this circular more weight. Because the circular seems to say, listen by name, and it says to everyone out there, we don't like him. We don't like him because of his collusion and association with the Alan McAlfee gang. Mr. Ghanem did not have the original documents. Number one, they were email documents to him. He also had family members who are United States citizens, who live in Michigan, who were available, who did not come in and testify for him, who could have testified to his political opinion, who could have testified to the treatment that, that happened, and who could have testified about this circular. But I would, I would also point out that he took into account the fact that when he came in, and this is a man who had been, who had been raised at least for six years in the United States, so he knew how the United States functioned in terms of its law enforcement. He told, he told the, the immigration inspections officer that he, it was finances that made him leave. He didn't mention anything about his politics. He said he was not involved in the conflict. This is not somebody who had a political opinion. He gave a sworn statement for an immigration judge to conclude he was not credible in his testimony, but the immigration judge did conclude that he would. No, no, I would disagree with that, your honor. Right. What the immigration judge found, and what the board found, was that Mr. Ghanem really did not point to anything that showed what his political opinion was. All of his statements when he came in, there was no political opinion. So the only political opinion is what he testified to, and he testifies that he, along with thousands of other people, attended this, this March 2011 Day of Dignity. He doesn't say he was recognized. He doesn't say he was pointed out. He was not even harmed at that. He also said that after that point, when, after his daughter was, was born, he backed off from involved, being involved in any political activity. He never identifies a group that he belongs to, and although the petitioner, you know, was not aware, the Houthis did not, did not hook up with Saleh until far after 2015, when they took control. Saleh joined them at some point, but then broke away from them and was actually killed by the I understand that he, he, on various occasions, expressed dissatisfaction and opposition to the Houthi faction. Well, he claims that he did, but he doesn't say who he told. He says, I, I, I expressed that people needed to have their rights, their rights. Would that not qualify as stating a specific opposition to a specific group in Yemen? Well, what, what group and at what time, at what time? I understand. At the time that he supposedly complained that people needed to have their rights, and he doesn't, he doesn't even say what rights those were. He doesn't say what group he belonged to. He didn't say who. He attended this Day of Dignity, which was against the then current government, which was Saleh. But he doesn't claim that he talked with, with anyone other than his brothers-in-law about the Houthis. How do you account for this official, so-called official document that was filed in a court in Yemen? Truthfully, Your Honor, I mean, I can't argue it. But if you look at the trend in this case, he only developed a political opinion when he came into court. And he, in that, in that in absentia order, it claims that he belongs to an al-Malafi group, which there's absolutely no evidence in the record of anywhere that he ever belonged to that, that he ever claimed that he belonged to that. Does that matter? I mean, all that matters is that he's been, he's been attributed by others to hold that political opinion. That may be a different political opinion than the anti-Houthi opinion that his brothers-in-law mistreated him under. But, I mean, I don't know that there's, if, I don't know, anti-McLaughlin is perfectly anti-Houthi at all times, but they've attributed it to him. They've impugned it to him in this circular, it looks like, in, I mean, doesn't- But you cannot give more weight to that circular than the immigration judge did. The immigration judge is- But what we can do is say that the immigration judge didn't sufficiently account for this adverse evidence. So, so I'm not saying we can give more weight to it, we can give it any weight, we can just say, when you get something that attributes a political opinion to you, and it calls for your arrest, it's fine that the immigration judge don't want to give that weight. But it needs an explanation appropriate for why it doesn't want to give the weight. The line-of-business, where they have to show why they don't want to give this piece of evidence weight. Yes, these were not original. These were not original documents. There was no testimony about where he got them from and who sent them to him. The certification, there was no certification of the translation. So that would mean that they should get no weight. If they're inauthentic and- The reason- Give them no weight then. Yes, the reason- But giving them some weight, a reduced weight, is weird because authenticity and legitimacy of documents is kind of binary. Something's either authentic or it's not. And so it feels weird that you'd say, hey, I have doubts about the authenticity of these, I'm going to give them reduced weight. Why not say I have doubts about the authenticity, I'm going to give them no weight? He specifically states, and I believe it's on 194, I can find you the exact place. But he specifically says that he doesn't give them no weight because of the pro se position of the- Because the court recognizes the difficulties faced by a detained alien, these documents will not be excluded, but will be afforded the diminished weight they deserve under the circumstances. So the immigration judge does explain what he is doing and challenged the petitioner in this case on the fact that these were not original documents and asked him where they came from. Does the government dispute the accuracy of the translation of those documents? Yeah, that's, it's not a question of us disputing or not disputing. I don't read Arabic, so I don't have any way of doing that. But the immigration judge has access to interpreters. To the extent you're telling us that the absence of a certification of the translation is a reason that we should interpret what the immigration judge said to really discount, you know, give zero weight, in effect, to these documents, did the government below, or even now, do you challenge the accuracy of the translation? Your Honor, if it were me, I would challenge the accuracy of the documents themselves, because I don't believe that they are what they purport to be, particularly the circular, perhaps not the in absentia order. But then again, Mr. Ghanem said that the only reason they went after him was because he sued them and got a judgment against them. And that's why they went after him in court as retaliation. But those documents were, in fact, filed, weren't they? I mean, were they official documents that were filed in an official arm of the government, perhaps in court somewhere? Well, we don't, we don't know that, Your Honor. I mean, these, the, Ghanem testified that they were copies that were emailed to him. We have no idea, there's no indication in the record that there's even a West Amunra court. There is no, I mean, there's no indication of a person who purports to be the Deputy Minister of Justice of Yemen even exists. I mean, it's, there was cause for... But these are all great reasons to give the circular no weight, right? You just say, look, we think it's inauthentic, we think it's made up, we think it's fabricated. If the IJ did that, then maybe substantial evidence would support the IJ's decision. But the problem is the IJ said, I'm going to give them some weight, just not a lot of weight. And when you read the immigration... Once you cross that threshold, though, into some weight, then that means that these have to be And once you treat it that way, then he has to explain a reason for not giving it more weight. And the circular calling for someone's arrest based on their association with a disfavored group seems to be pretty strong evidence if it's authentic. And so I'd expect a better explanation other than kind of, I'm 50-50 on its authenticity. I can't explain why the judge did that. But I will say that the judge did not account for them for those documents in his decision. And truthfully, you have... I mean, in order to reverse this decision, the court has to find you'd be compelled, that a rational prior effect would be compelled to find... No, there's two ways we can grant the petition. One is if we're compelled on the evidence, or two, if we find that the agency below did not consider the whole record. So the compelled presumption only triggers after we find that they've adequately addressed the whole record. And so if there's an inadequacy in the whole record review, if they don't consider certain evidence, then they don't get the benefit of that compelled presumption in their favor. And what I'm saying is, how do we know that this gets the record prerequisite for that favorable compelled presumption? I mean, it's like a lot of things. I don't know what the immigration judge was thinking, but the immigration judge obviously looked at the documents, took them for what they were, and found that they did not figure into the fact that there was no place in his record where this petitioner expressed... You don't even know what his political opinion is. He says, I don't agree with the Houthis. I don't like violence. I don't like this. He doesn't belong to any group. He doesn't belong to... So I can't explain what was in the judge's head. I will say that the judge took it into account, gave it, looked at it, considered it, and did not give it the weight that it showed that he held a political opinion. And that is the nexus issue. What we have in this record is Mr. Ghanem's testimony that he was persecuted because of his political opinion. And these documents, including the record of the case he brought against his persecutors and those court documents that the immigration judge gave some weight to. And we have nothing in this record that suggests, other than the family connection that you pointed to, that there was not a political opinion that was at least imputed to him. But you do. But you do. Was supported by substantial evidence. But you have his own statement in his asylum declaration in which he says that it was only after he sued them that they came after him and went for this order. So they may have pull and may be able to bribe somebody to enter an order against him. It's not because of his political opinion. It's because of retaliation for what he did. And if the immigration judge gave it that weight but said it doesn't show his political opinion, that is fair. So let me just tease together what you're saying. You're basically but after a while, basically what you're saying is maybe these brothers-in-law were able to get a court to enter, maybe a kangaroo court, whatever you want to call it, to enter a judgment against him that's no good. And it was always motivated by familial tension, not political opinion. But then they kind of one-upped it and they got this circular, which might have been motivated by some familial tension. But it says explicitly that we're doing this based on your association with a disfavored group. And so once they know that, I don't believe that's what the circular said. My computer doesn't seem to be working. So I can't. I'll read you what it says in translation on me. It says for their conclusion, collusion, and association with the Al McLaughlin gang. I mean, I don't know who the Al McLaughlin gang is. I have to look at the record and piece together who that is. I mean, if it's, you know, but I mean, if you do a search political element to it, if you do this search in the record, there is no Al McLaughlin group. There is a person by the name of Al McLaughlin, but there is no group. And he never claimed that he was, he belonged to this group. He never claimed that he belonged to any group. He never claimed that. So, I mean, I guess at one level, if the Al McLaughlin group is a political organization, then this shows that the circular is going for the political organization. If in contrast, if the Al McLaughlin group is like a crime family, then I guess this shows not political opinion, but it's association with a crime family. And so I guess to me, it hinges on whether or not the Al McLaughlin gang is a political association or more akin to a crime family. And what do we Mr. Ghanem to prove his case, to prove his eligibility, which required that he proved his political opinion. He never testified that he belongs to any group. It's required that a political opinion be imputed to him. Right. We're agreed under our case law, it's required that a political opinion be imputed to him. But he did not, he didn't rely on imputed political opinion. He relied on actual political opinion. He said that he told his brothers-in-law, and this is really the only opinion that you can take on this record. On the basis of political opinion, that's the claim he was making. And that covers an opinion held or imputed to him. Well, that's fine. But the political opinion that he claims was imputed to him was anti-Houthi opinion. It was never out of his mouth that he claimed or in any of the documents, and in fact, all of his pre-asylum documents say he was not a political person, that he left because of the conflict and didn't want to get involved. But he never claimed membership in Al McLaughlin group. And the record contains no evidence that there is an Al McLaughlin group. That is the problem for him. And it was his burden to prove that he had a political opinion and that they persecuted him, whether actual or imputed on this political opinion. But the judge found him credible. And don't we have to work with that record when we're determining whether substantial evidence supports the judge's conclusion that he was not persecuted on the basis of political opinion? But the statute and my opponent argues in his brief and seems to argue here that simply because the immigration judge found him credible, therefore you must give him asylum. That is not what the statute says. And that's not what this court has said. In Chavarria and in the statute, it says credible testimony may be sufficient if it is persuasive. And I forget what the other terminology is, but the board specifically said that his evidence was insufficient, that he did not prove what his political opinion was, that there was not sufficient evidence in here. So the fact that he was credible doesn't mean he could have gotten up and testified. My family beat me and I was married to their daughter and they forced me to divorce the daughter. That would be credible, but it would not show what his political opinion was. It has to be more than credible. It has to be substantive and prove that he had a political opinion. He clearly expressed his aversion to the Houthi group in Yemen, and he did express that, did he not, to the immigration court? Yes, but the opinion that he expressed was to his brothers-in-law. His brothers-in-law were individuals who were family members who had the power to remove their sister. It wasn't the government at that point that was coming after him. There was no Houthi government at that point. The Houthi government was not in power until 2015. Your view is that he never, while in Yemen, never expressed any aversion, any disagreement with the Houthi group? No, your honor, I didn't say that. I said he testified that he told his brothers-in-law that he was against the Houthis. At the point that he told his brothers-in-law that he was against the Houthis, the Houthis were not in power. I'm not even sure they were a political group at that point. The Houthis did not gain control until, I can give you AR-534, they did not establish their supreme council until January of 2015. He claims that this happened in December of 2011 and January 2012 when Saleh was still in power, and he was against Saleh, and at that point the Houthis were looking to bring down Saleh as well. He expressed, and he said that he didn't like the Houthis, he was against the violence, but he expressed that opinion to his brothers-in-law, and that's the issue. He vaguely references talking about rights and about people having rights and about going to other rallies that he doesn't identify and don't appear in the record. He also tries, I'm sorry, if I could just finish this thought, he tries to link his supposed work with his uncle. He doesn't even prove that the people that he was spying on even knew what he was doing. Ms. Igoe, can I just also make sure we're on the same page, that what we're looking at is not just the existence of past persecution, you know, by and with the consent of the government or but also future, the likelihood of future persecution or future torture if he returns, and in view of that, the points you're making about when the Houthi took over more of the government, why do they make a difference to that element? I would say that the question of the court can only decide on what the board decided here, and what the board decided was there was not sufficient evidence, objective evidence, demonstrating his political or religious affiliation and participation which are central to his claim. That's what they decided, so what they decided was there was no past persecution. Now, regardless of past persecution, there was not a likelihood that he had not shown persecution on the basis of a political opinion, and so we've been talking about whether there's substantial evidence supports the conclusion that he was not persecuted with an inference that that would continue because of past persecution or simply future persecution, but either way, whether there's a nexus to political opinion. That's the only thing that the immigration judge and the board decided in this case was nexus. They did not go to future persecution. They could have gone there because someone can prove a well-founded fear of future persecution, regardless of past persecution, if they submit sufficient evidence showing even though they weren't persecuted in the past, the evidence shows that there's a well-founded fear of persecution in the future, but those words don't appear in the IJ or BIA's decision. Both the IJ and the board in this case said that there was no nexus, which to me, even if you were to consider the fact that if you were to decide that they did consider a well-founded fear of future persecution, there is the problem of nexus here, and so I would argue that... I think we've come to that ground and understand your argument on nexus, and we've gone significantly over at this point, so unless my colleagues have additional questions... If I could briefly address the issue of the Cat claim in this case, just to say that what the IJ and board decided was that he did not show a likelihood of persecution because he did not establish sufficiently the likelihood of each one of the links in this chain of events that would have to occur. My opponent argues that there was a wrong standard for acquiescence, but that is not what the court, what the IJ and the board even talked about in their decision. What they talked about was him not proving a likelihood of persecution because he did not establish the likelihood of each one of those links, and my opponent does not address those links and does not address the evidence to those links, and so I would say that he has waived that argument, and I would ask the court to deny the petition. Thank you very much. Thank you. Mr. Weaver? Thank you, Judge Cross. Three quick points on the asylum claim, and then I want to say just a brief, a little bit about the Convention Against Torture claim. First, asylum can be granted based on an imputed political opinion, and the issue, again, as this court said in Espinoza-Cortez, is whether the persecutor attributed a political opinion to the victim and acted upon that attribution. The entire course of persecutory conduct in this case shows that that is exactly what happened, both with Ghanim's brothers-in-law, the other Houthi men who joined them, and then ultimately, in 2014, agents of the Houthi court and the Houthi security service. Who is the Al McLaughley gang? What is that? What the record reveals on that is that there was a, I believe, Deputy Prime Minister McLaughey who was forced into exile. Petitioner also submitted a photograph of himself with Deputy Prime Minister McLaughey. That's at AR 969. It is, as Your Honor has pointed out, it is unclear exactly how that works, other than it is very clear on the face of both of those documents that they are based on petitioner's association with that group and incitement against the regime. So it has a political connotation to it, Your Honor. So I guess the thought is this. If it's like a crime group, if someone says, we've got a crime group that's upending the government, that's a different thing, but this has to be a political group. I guess I'm struggling here with who this group is because the IJ didn't really explain that. If he's the former Deputy Prime Minister, but Ghanem was opposed to the prior regime, it seems strange that he would be associated in a positive way with someone from that regime. And so it feels like I've got to be missing a few steps, but because that doesn't make sense, right, to say, hey, I didn't like Saleh's regime, but I'm associated with a Deputy Prime Minister from that regime, and because of that association, I'm now being targeted. Something doesn't add up there. Can you just kind of, you know the record better than I do. Can you do what you can with that? Your Honor, setting aside the political factions, on the face of the document, and I'll quote the full language again, quote, for his association with the Al-Muklafi group to incite order against order and the regime and for anti-Shia sedition, close quote. So despite the record not being entirely clear on how the Al-Muklafi group or Deputy Prime Minister Muklafi fits into the political picture, those documents show that they are issued based on petitioners' association with those groups, which are against the Houthi-controlled regime at that time. Well, it's that last part that I guess the BIJ were to be explicit about and say, I don't view those as political groups. I view those as some other non-political group. They can be some other organization that I don't view as political. Then maybe his association wouldn't be on the basis of political opinion, but some other association. But I guess the answer is it was the IJ's job to spell that out in accounting for this as opposed to your job. But it is, it is weird because there's a bit of a switch. His brothers-in-law didn't mistreat him because of the Al-Muklafi gang. They never said anything about that as far as I can tell in the record. And so now it's almost like it's a new opinion that's been attributed to him that's different or more specific or more focused than what his brothers-in-law attributed to him. Mr. Baker, could you perhaps clarify for us along those lines whether the Deputy Prime Minister Al-Muklafi was the deputy to President Hadi or Saleh? Your Honor, that's my understanding is that he was the Deputy Prime Minister to Hadi, and that government is the one that was forced into exile. So Saleh came down, I believe it was 2012 or 2011, and then you have the Hadi government, which, you know, that's during the Arab Spring. There was some hope for democracy and the record shows this in the State Department reports. But then you have the Houthis coming to power and aligning with Saleh. So at that point, the Hadi government and Deputy Prime Minister were forced into exile. If I could make one other point on the circular and judgment, there was no dispute below about the provenance or the authenticity of those documents. The only issue that the IJ pointed to was the lack of a certified translation. And I would represent to the court that Petitioner has had those documents translated again and has a translation that has a stamp certified translation on it. And the English translation is materially the same as the English translation in the record. And Petitioner's happy to provide a letter to the court attaching those if that would be useful. But the key point, though, is that all those documents did, they are smoking gun evidence of political persecution, but they just confirmed what Ghanim testified to. And so he testified at AR 479 through 80, that after the Houthis got in control, they got an arrest order against him for his political opinion. And so again, that's credible, unrebutted testimony in the record under Shabariya and under Espinosa-Cortez, that suffices to demonstrate that political opinion was one central reason for his persecution in Yemen. And I would just make one point. Is that enforceable? Your adversary was suggesting that that document may not even be enforceable in Yemen, because there's question about who really is in control. Judge Fuentes, in addition to the IJ's recognition that the Houthis are effectively the governmental body in a region of Yemen, in the record at AR 534, the 2017 State Department report says, quote, Houthi rebels controlled most of the security apparatus and state institutions, close quote. And that's throughout the entire country, not just in the regions that they had physical control over the land. And that, Mr. Weaver, was the current situation in Yemen. The situation in Yemen has only deteriorated since the 2017 report. This is all outside of the record. But certainly, there's no case for changed circumstances that would be positive for Mr. Ghanem. The Houthis are still in control. There is no reason to think that this arrest warrant and this judgment against him are not still outstanding. All right. Thank you, Mr. Weaver. And we obviously are limited to the record before us. But you and your firm have taken this on a pro bono basis and undertaken additional advocacy steps, such as you alluded to. And for your pro bono work, you have the court's thanks for taking that on. It's important for the court and for the cause of justice. Thank you. So we thank both counsel for your arguments today. And we will take the case under advisement.